Prepare to hear argument in our first case, Mr. DeVita. Good morning, Your Honor. My name is James DeVita, and I represent the appellant in this case, Infinite Allah. Your Honor, one of the nice things about living in the United States is that we have certain freedoms. The freedom of speech and the freedom of religion. And there are laws that actually prevent the government from abridging those freedoms. One of the laws that does so is the law that we're talking about in this case, which is the Religious Land Use and Institutionalized Persons Act, which states that no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution unless the government demonstrates that the imposition of the burden is, number one, in the furtherance of a compelling governmental interest, and two, is the least restrictive means of furthering that compelling governmental interest. And in this case, Your Honor, we argued at trial that the nations of gods and earths was a religion and that the government had substantially burdened that religion. The trial judge did not reach the issue as to whether or not the nations of gods and earths is a religion. At the same time – I mean, that's a real thicket to get into what is a religion and what's not. I mean, those are tricky words. I thought the trial judge did exactly the right thing in not saying this is a religion and this is not. I mean, because trying to define what is a religion is a very hard thing to do, and the trial judge said, no, I'm not going to go there. And I understand that. What I was about to say, Your Honor, is I understood why he did what he did. The only thing I would just ask Your Honor to consider is the fact that if this case does go my way, I think the issue will arise again. It was fully briefed. It was fully argued. The evidence was there. If the court is inclined to reach it, I think it's set to be decided. Your Honor, what I would like to spend the majority of my time discussing – Did the trial judge assume that it was a religion? No, he made no finding on it whatsoever. Did he assume it was? No. That's not my recollection. If I misspoke, I stand corrected. But my understanding is he just basically decided that – As a practical matter, he would have assumed it was. Otherwise, there would have been no reason to reach the other question. Well, I would have assumed so, Your Honor. That's correct. What I wanted to spend the majority of my time discussing – He basically said, assuming it is a religion, your man loses anyhow. Yeah, and he based his decision on – Well, that's, I guess, what his conclusion was. But the question, I think, is whether the government has a compelling interest here and, two, whether they've chosen the least restrictive means of – Well, doesn't Qatar say that – Hasn't the Supreme Court itself said in Qatar that prison security is a compelling interest? Well, the question becomes, though, what's the basis for that claim? And the basis for the government's claim in this case is they claim that the nations of gods and earth rather than being a religion is a gang, and therefore they have the right to not recognize a religion and not allow my client to practice this religion because it is a gang and because it's a threat to prison security. And I think that what I would like to point out to the Court is the following. When someone makes an assertion, they have to prove it. It's that simple. And at trial, there were certain types of evidence presented, and I think the most compelling evidence that I would like to point to for our assertion that the government is incorrect when it states that the nations of gods and earth is a gang are simply the statistics that I was able to elicit from the government's own witnesses themselves. There were 2,300 assaults in the Virginia Department of Corrections prison system within 2012, and there were about 2,000 in 2011. So I asked Mr. Klor, who is the government's expert on gangs and prison security, I said, well, how many of those assaults were committed by members of the nations of gods and earth in 2011? He said he didn't know. How many were committed in 2012? He didn't know. How many were committed in 2013? He said he didn't know. And the long and the short of it is if you read through all the testimony presented by the government's witnesses, I think that they said at most there were two assaults, and the testimony spanned 20 years. So from a statistical point of view alone, I don't see how anyone could conclude that the nations of gods and earth is a dangerous gang. I mean, it strikes me that the one other point I was trying to make, assaults happen in prison only. Are you giving credit to all the evidence? I thought there was evidence of assaults in the last three years, and it was a pretty good percentage of those that were considered serious assaults, not just little pushing incidents. No, I think if you have to give, you know, this was a trial, and there were findings of fact. That's correct. So the standard that we're looking at this is not whether there was evidence, but whether the district court had substantial evidence to support its conclusions. And so you have to address the most adverse evidence against you. And you quoted one person, but wasn't there evidence of serious assaults, six of them or something, in the last three years? No, I think there were two. Two. And that was by Mr. Duke. It was in the past few months, and you haven't mentioned Mr. Duke's testimony. Here's what the district court said. Duke testified about an incident occurring a few months before his testimony where an inmate affiliated with NGE stabbed two members of the Gangster Disciples. And, you know, the district judge credited those witnesses. And then Clore was testifying about an incident where an NGE inmate assaulted another inmate because that other inmate disagreed that the NGE member was a god. Yeah, and those are the two incidents that they mentioned. And they're pretty serious incidents. What about Robinson's testimony? What in particular about it, Your Honor? He said that in the last two years we had six specific gang-related incidents involving 5% offenders. All right. And each of those six incidents had some connection to violence or a serious event that resulted in some type of harm. All right. Now, that's in two years. All right, and I do want to address that directly. And that's also related to a much smaller number. They looked at – you were talking about the 2,000 was incidents. And they were talking about serious incidents. And they said there were 38 in 2011 and 53 in 2012. All right, and I guess the overall point I'm trying to make is this. But you've got to make the point based on the evidence that's all the evidence. You can't be selective when you've had a trial and findings of fact. And I think you need to take into account Robinson's testimony and the testimony of others. And you can't argue that over 20 years there's only two incidents. Well, Your Honor, if I could just – the one point I want to try to make is this. Prison is a dangerous place. Assaults happen all the time. Well, what's your answer to my question about Robinson's testimony? I'm trying to do that. Okay, what I'm trying to argue is this, Your Honor. Prison is a dangerous place. Assaults happen all the time. You've got 2,300 in a year, which means you don't. No, you don't. You have 2,300 incidents. And that's a much broader category. Well, I thought the testimony related to assaults. But the point I'm trying to make is this. If you take a look at particularly Mr. Davis' testimony, Arnold Davis, they start from the presumption that any assault or any criminal activity involving, remember, the nations of gods and earths, is a gang-related activity simply because it involves a member of the nation of gods and earths. They testified to the contrary on that, too. There's testimony in there that they did not make that classification until they completed the investigation and were able to associate the cause of the violence to be gang-related as opposed to a personal incident. Well, I do remember asking him the question. Well, you may ask one question, but you have to take into account all the evidence in the record when you're arguing pursuant to a trial and findings of fact. The question I would like to simply pose. On the question of the assaults and everything, going back to the trial, the district court made a finding that if there had been any diminution in the number of assaults, it was because gang violence was such a serious problem in the Virginia correctional system in the 1990s and everything that there had to be a massive infusion of staff members to try to deal with the problem. And he said, if there has been any diminution in the number, this is the district court after listening to the evidence. Right. He says, I don't attribute it to any change in behavior. I attribute it to the fact that the problem had become so endemic that they had to bring in a new infusion of staff members to deal with it. He says, there's been no change in conduct. The threat is the same because you have what the district court found, as a matter of fact, using the VDOC definition of gang, was that this was a gang. And he makes the further point that where you're talking about violence, to have a gang in a prison with a patently racist message and people in meetings talking about killing people with different racial origins, that's a very difficult situation. No, I understand. And the first point I was trying to make is let's agree that there's six assaults and the six assaults were committed by members of the nations and gods. No, it's more than that. The assaults, according to Robinson, were not just incidentally between members of one gang or in the other, the five percenters. They said they categorized as gang-related only after they could make that association. His testimony was those specific incidents were only labeled as gang-related incidents. This is Robinson's testimony. After an investigation determined the incident was directly gang-related, explaining that in the instance where two individuals are members of different groups, that does not automatically mean a gang incident. No, that's testimony that's just directly contrary to what you just said. And I'm just suggesting that if you're going to make an argument, you're going to have to take into account the evidence against you. I understand. I understand. And all I'm trying to say is that if there are six assaults, and let's say they were committed by the nation of gods, I would imagine you'd- Not committed by. They were gang-related. In other words, it wasn't just members committed against another. They excluded those until they could show that the incident arose out of the gang's philosophy or whatever the motive for the particular incident was. And I know you disagree with me, but I think it all stems from what Mr. Davis said. I think whatever investigation they did was as simple as this. Was it committed by a member of the nations of gods? Yes, therefore, it's gang-related. We'll just answer my question then. How do we take into account Robinson's testimony that that is not what they did? He said we did not just account for an assault between one gang member and another gang member. We considered it a gang assault only after we could relate the assault to gang-related activity. I would ask you to weigh that out of what Mr. Davis said. I would ask you just to compare the two statements. Well, we can't do that, can we? We have to take the facts against you, don't we? Well, the one thing I would say though is... It's like a jury verdict. I mean, it was a bench trial, but then the judge rendered the verdict and he spelled it out. And so the facts go to the other side. I don't believe Mr. Robinson got into enormous detail about what type of investigation they conducted or how they determined it. You cross-examined them, I assume. I did. We can't redo a three-day bench trial up here. And the district judge made extensive findings of fact. And one of the problems is you can't take a chance with this because when you have gangs taking over a prison, the people that suffer most are the most vulnerable members of the prison community. And they're put under tremendous pressure to sign up with these gangs and the recruitment pressures on them are intense. And the people that suffer are the people who are most vulnerable and least able to fend for themselves. And why we would ever leave them prey to this sort of misconduct is simply beyond me. After reading what the district court said, he listened to the evidence. He said, I don't credit your evidence at all. He said, I'm making a credibility finding. And I credit the Commonwealth's witnesses. I don't credit your – you put on seven inmates, I guess most of them were NGE members. He said, I don't credit it. This strikes me as false. It's self-interested. I place no weight on it. And that's the whole point of a trial. Well, yeah, and I think that shows an inherent bias, with all due respect. Bias by the court? Well, it's self-serving. All testimony is self-serving, isn't it? That's almost what you have to argue here. You have to come up here and give the facts to the other side. And you want us to change the facts. We can't do that. No, I'm not asking you to do that. I mean, to conclude that the testimony – They're entitled to the facts because the judge gave you a trial. Right. He gave you a trial, and he rejected your side of the case, basically on credibility determinations. He accepted the other side of the case. So for you to prevail, you've got to give the facts to them, or you've got to say they're clearly erroneous and that kind of thing. Well, I remember that part of the opinion. Well, you had a little bit of evidence that was rejected. I remember that part of the opinion very well. I'm sure you did. And the only reason he rejected the inmate's testimony is because it's self-serving. It's self-serving. What testimony isn't? Everybody that gets up there and testifies for the other side is self-serving, too. They have a reason to say what they're saying. And they're supporting their side of the case. So you're saying it was clearly erroneous what he did? No, no, no. I just wondered. What are you saying? I mean, we have a trial where findings of fact were made. Right. And the findings of fact is that this group operated like a gang and that the prison authorities could not tolerate gang activity in prisons. Now, that's what the government put facts on. And the court found those facts. Right. Now, what are you asking us to do with those facts? What I'm asking you to do is question the judge's application of the law to the facts and the conclusions he drew. Well, if you have those facts, what's the law that you'll criticize? Well, for example, let's say, once again, I've been trying to finish this thought. Let's say six inmates from the NGOE did commit assaults. Based on a gang-related assault. Well, let's see. But then, once again, we'll accept that. We're not going to ask you to reserve some of these comments for rebuttal, okay? All right. All right, you've got some rebuttal time. Okay, thank you. Mr. Raphael. May it please the Court, Stuart Raphael for the Commonwealth of Virginia. There are two major flaws, I think, in the plaintiff's theory on the appeal here. The first is the failure to address the clearly erroneous standard, which is required, as the Court has pointed out, under Federal Rule of Civil Procedure 52. And the second flaw, as the Court has also pointed out, is the failure to provide proper deference to the judgment of Virginia prison officials on both prongs of the RLUIPA inquiry. That is, whether there's a compelling state interest in prison security and whether the state has used the least restrictive means to achieve that interest. The court in the United States v. Bolander case that Judge Neumeier joined in 2013 I think set out very well the Rule 52 standard following the Supreme Court's decision in Anderson v. Bessemer City about the deference that's required to a trial court's factual findings, even if a court of appeals thought it might have decided the evidence differently, unless those findings are clearly erroneous, the court must defer to them and uphold them. And that's even more true, even greater deference is required where, as in this case, the findings are based on credibility determinations. With regard to the deference that's required under RLUIPA, the court pointed out the Cutter decision in 2005, which made clear that deference is required to state prison administrators. The strict scrutiny that you have under RLUIPA is a different kind of animal than the strict scrutiny that's applied in traditional equal protection cases. And I think the court makes that plain in Cutter by talking about things like considerations of cost and administrative burden are proper in a RLUIPA inquiry. The threshold factual issue on appeal is whether there was substantial evidence to support the trial court's finding that the NGE is a gang. And I think the trial court properly sidestepped the question of whether it's a religion because for purposes of Did he assume it was religion? Yes, he did. He did assume it was religion. Yes. And found it was a gang. That's correct. Can you be a religion and a gang too? Theoretically, I suppose you could be. Do you have a violent religion? Theoretically, I think you could. Is that what we have here then, a violent religion? Well, the state here does not concede that NGE is a religion. The judge assumed it. The judge assumed it. That's right. We got what we have. The judge assumed it was a religion and he found it was a gang. And all I'm asking is, are those things that counterintuitive to say it's both of those? Well, the issue… Can it be both of those? I think the answer has to be yes. I think it can be. You have to say he assumed it was religion and he found it was a prison gang. I think that's right. I don't know. That's what you got on this record. Haven't we had a regular history of religions functioning as gangs? I think you could point to that. Absolutely. I should jump right on that and say yes. But the issue here isn't the academic exercise of does it qualify as a religion. The issue is what are the consequences of whether it's a gang. But the judge assumed it was a religion. He did. That's exactly right. So we start with that assumption. He didn't make a finding of it. He went on. That's right. I thought he gave both of you a three-day trial. That's right. And heard it all out. That's right. And he rendered a verdict and set forth his findings and conclusions. That's exactly right. And he didn't decide… There's no question about that. Now, they may claim he's biased or he's clearly erroneous and all that kind of stuff. They can do that. Yeah, I don't think the evidence is there. But he did work hard at it. All of you did. The evidence isn't there to show bias. I think the judge was very conscientious in how he analyzed it. I don't think he has that in his brief, but he said it was… He did. The testimony on the issue of whether NGE is a gang consisted of the plaintiff's own testimony that it's not and the testimony of eight inmates who were members of the NGE who said it's not a gang, who gave sort of the same… It was almost a Python-esque, you know, absolutely not… You're just arguing the facts now, right? I mean, I don't understand why you don't… I don't think your colleague challenged that. I asked him, are you challenging these facts as clearly erroneous? And he said, no. Yeah, well, I think that's the end of the case because that is the issue. Maybe you should concentrate. Is there anything that we have overlooked? You have to assume that we've read the briefs and been pretty careful in our preparation of this case. And is there anything that we've overlooked that you wish to comment on? Just one minor thing, and that is your Honor was correct in listing the examples from the record of the actual gang activities. On the point about the statistics don't show a huge number of actions of gang violence by the NGE, the Court correctly pointed out there were at least six in the past couple years, including a stabbing of… That doesn't mean there were only six. That's correct. At least six and something being only six. That's correct. And Mr. Clore, who qualified as an expert and said it is a gang, said that there were other incidents. Well, the judge here recites that Robinson testified that of all the incidents, 125 involved an inmate affiliated with NGE. That's correct. And of those six, it clearly involved violence. There were 119 in addition to that that didn't necessarily involve the same level of violence. The last point I'd make, Your Honor, is that the trial court, Judge Jones found that the reason there weren't a lot more statistics is because of the effectiveness of Virginia's policy in this regard. That's at page 771 of the joint appendix. Yes, and that is supported by the expert testimony from Clore at page 470. If there are no further questions, thank you for the Court's attention. Thank you. Mr. DeVita, you have some time for rebuttal. The argument that I was trying to make initially with respect to the statistics is simply this, that in any group of prisoners, assaults are going to happen. I imagine you would find six assaults among Protestants, six assaults among Catholics. It doesn't mean that these people are acting as an organized gang. And the one thing I was trying to point out, assaults happen in prison all the time. And the question, I think, becomes… I don't want to return. I understand that argument, and you're probably correct in making those statements. But you still have to confront the factual findings that this group, the five percenters, functioned as a gang. And whether they were religion or not, the Court assumed they were. They gave you that, but said they functioned as a gang and that it was gang-related activity that needed to be addressed. And the facts are found on that. And I just need to understand what your position is with respect to the facts that the Court found. Well, I guess the question becomes, you know, the conclusions drawn from the facts, which is a legal matter. Well, let's start with the facts. Is there anything wrong with the facts that were found? Other than… I guess what I'm doing is questioning the judge's conclusions drawn from the facts. So you accept the facts, and you just don't agree with the conclusions that he drew from the facts. For example, that if there were six assaults and six of them happened to involve members of the nations and gods, that that necessarily means they're a gang. Yes, I do. Except he also had testimony about those six, that those particular six were gang-related. Once again… That was the testimony about Robinson. Yes, and once again, Mr. Davis, when I asked him, I said… But that's a conflicting fact. You still have to come to grips with Robinson's testimony that they were gang-related. So I guess the question would be, once again, what did they do to make that determination? Mr. Davis said all they did was say, well, did it involve a member of the nations of gods and earth? Yes. Therefore, it's a gang-related. That's exactly what he said. And I think that that's the level of your investigation to conclude it's a gang. That's not much of an investigation. You're starting with a conclusion, and you're ending with the same conclusion. It's a tautology. The only other points I would like to make just briefly is I was trying to say, if in the course of the last three years there were 2,300 a year, you're talking about close to 9,000, 10,000 assaults, and six of these happened to involve members of the nations of gods and earth, I think that's pretty poor evidence that, A, they're dangerous. You can't assume that's all that's happened. I mean, Judge Niemeyer pointed out earlier, talking about these were serious incidents, and I'm sure that every prison assault is not reported as to what particular gang it's associated with. A lot of them are just reported as assaults. And what I'm saying is I don't think six is the ceiling by any means. It's a floor. Well, and the only point I was trying to make is they're trying to state that they're a gang because six of them happen to be involved in assaults. When if you look at the general prison population, there are at least 2,300 others that happen. So why can you point to these six and say that makes these people a gang when the prison? Again, you don't take the evidence to what's given. They said 2,300 incidents. Then they categorized it down to, what, a hundred and some incidents that were serious involving assaults. And of those, in the last two years, there were six that they determined were not just between gang members, but were gang related. And there were many more that involved gang members. As a matter of fact, almost all of them involved gang members, didn't it? No, actually only 26. And that's verbatim. Twenty-six out of the 2,300 were gang related. You can actually make an argument based on that statistic. Gangs aren't even a problem if only 26 out of the 2,300 were gang. Well, the judge found that the prospective members had to commit crimes in order to join. That was the testimony of Mr. Duke. He found that, didn't he? The judge. He credited that. And I cross-examined it and said, Mr. Duke, give me one example. And he wasn't able to give me one. The judge credited that testimony, that these prospective gang members had to commit crimes in order to join. And I said to him. Now, what would that do to the security of a facility, more than one facility? I said to Mr. Duke, give me one example. He couldn't. He said that their newspaper contains coded messages. I said, Mr. Duke, what's the coded word? He said, this one's peace, this one's wisdom. I said, the problem when you really back up the government's case. Well, your argument is simply that the evidence is insufficient to support the findings made by Judge Judd. Yes. So you're arguing clear error. Yes. Okay. Okay. Thank you. Thank you. We'll come down and greet counsel and move into our second case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King